UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GEORGETOWN RAIL EQUIPMENT COMPANY, a Texas corporation,<br><br>           Plaintiff,<br><br>v.<br><br>HOLLAND L.P., an Illinois corporation,<br><br>           Defendant. | Case No. 6:13-CV-366<br><br>GEORGETOWN RAIL EQUIMENT COMPANY'S RESPONSE TO HOLLAND L.P.'S COMBINED MOTION FOR EARLY MARKMAN CLAIM CONSTRUCTION AND SUMMARY JUDGMENT OF NON-INFRINGEMENT |

**GEORGETOWN RAIL EQUIMENT COMPANY'S RESPONSE TO HOLLAND L.P.'S COMBINED MOTION FOR EARLY MARKMAN CLAIM CONSTRUCTION AND <u>SUMMARY JUDGMENT OF NON-INFRINGEMENT</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. CLAIM CONSTRUCTION PRINCIPLES ....................................................................... 2

III. APPLICATION OF CLAIM CONSTRUCTION PRINCIPLES TO THE ALLEGEDLY
DISPOSITIVE THREE TERMS .................................................................................... 5

  A.  Holland Fails To Overcome The Presumption That The "Algorithm For" Limitation Of
Claim 16 Is Not A Means-Plus-Function Limitation. ................................................... 5

    1.  Holland Provides No Support For The Proposition That A Limitation Reciting "An
Algorithm For" Should Be Construed As A Means-Plus-Function Limitation. .............. 5

    2.  The Language Of Claim 16 Demonstrates That The Processor And Algorithm
Limitations Are Definite Structures. ................................................................................ 6

    3.  When Read In Light Of The Specification, A PHOSITA Would Understand The
Definite Structures Recited In The "Algorithm For" Limitation. .................................... 7

  B.  Even If Claim 16 Contains Means-Plus-Function Limitations, Holland Fails To Provide
The Proper Construction Of Any Such Term. ............................................................... 8

    1.  Holland Fails To Perform Either Step Of The Appropriate Two-Step Analysis For An
Alleged § 112 ¶ 6 Claim Limitation. .............................................................................. 8

    2.  Holland Fails To Provide Any Analysis Of The Statutorily Required Equivalent
Structures. ........................................................................................................................ 9

    3.  Holland's Proposed Constructions Improperly Read A Narrower Function Of A
Specific Embodiment Into The Claim. ............................................................................ 9

  C.  Proper Construction Of The Allegedly Dispositive Three Terms Requires That The
Ordinary And Customary Meaning Be Applied For All Three Terms. ............................ 9

    1.  "Analyzing A Frame." ................................................................................................... 10

    2.  "Region of Interest." ..................................................................................................... 11

    3.  "Determining." .............................................................................................................. 12

IV. HOLLAND FAILS TO PROVIDE ANY EVIDENCE OF NON-INFRINGEMENT .......... 14

  A.  Holland Has Not Shown That There Is No Genuine Dispute As To Any Material Fact. ... 14

    1.  Holland Has Failed To Present Any Facts That Show Non-Infringement, And All Facts
Concerning The Operation Of The Accused Rail Vision System Are Still In Dispute. 14

    2.  Even If Holland's Constructions Are Adopted, Holland Fails To Provide Any
Undisputed Fact Evidence Of Non-Infringement. ......................................................... 15

  B.  Holland Fails To Present Any Evidence That It Does Not Infringe Under The Doctrine Of
Equivalents. .................................................................................................................. 15

V. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307 (Fed. Cir. 1988) ................................................... 14

*Affymetrix, Inc. v. HYSEQ Inc.*, 132 F. Supp. 2d 1212 (N.D. Cal. 2001) ...................................... 6

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003) ............................................. 2

*Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003) ..................................... 5, 6

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001) . 2

*Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419 (Fed. Cir. 1997) ................................................ 4

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002)......................................... 5

*Cole v. Kimberly-Clark Corp.*, 102 F.3d 524 (Fed. Cir. 1996)....................................................... 5

*Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988) ............................... 3

*Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367 (Fed. Cir. 2004) ........ 3

*Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996) ................................... 6

*Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352 (Fed.Cir.2004)...................................... 3

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) .... 2

*Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295 (Fed. Cir. 2004).......................... 3

*Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004).................. 5, 6

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) .......................................... 2

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303 (Fed. Cir. 2001).......... 4, 8

*Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ........................................ 3, 4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................................ 2, 3

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001).... 3

*Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372 (Fed. Cir. 1988)................................................ 4

*Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989 (Fed. Cir. 2003) ...................... 3

*Stragent, LLC v. Amazon.com, Inc.*, No. 6:10cv225 LED-JDL, 2011 WL 2199498, at *6-*7 (E.D. Tex., June 7, 2011)........................................................................................................... 6

*Teleflex. Inc. v.Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)...................................... 2, 3

*Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ....................................... 2, 3

*Wenger Mfg., Inc., v. Coating Machinery Systems, Inc.*, 239 F.3d 1225 (Fed. Cir. 2001)............. 9

**Statutes**

35 U.S.C. § 112.................................................................................................. 4, 5, 6, 7, 8, 9

**Rules**

EDTX Local Rule CV-56 ......................................................................................................... 14

FED. R. CIV. P. 56................................................................................................................... 14

## I. INTRODUCTION

Before the Court is Holland L.P.'s ("Holland") Combined Motion for Early *Markman* Claim Construction and Summary Judgment of Non-Infringement ("Holland's Motion" or "Motion").   Georgetown Rail Equipment Company ("Georgetown") hereby submits this Response.

Georgetown respectfully submits that the claims do not require construction beyond the ordinary and customary meanings that a person having ordinary skill in the art would comprehend.  Holland's proposed claim constructions, however, are improper in general for failing to evaluate the claims from the viewpoint of a person of ordinary skill in the art. Furthermore, Holland's proposed constructions are improper for at least the following reasons: (1) for failing to overcome the presumption that the "algorithm" limitations are not means-plus-function limitations; (2) for failing to perform the proper two-step analysis for the alleged means-plus-function limitations; (3) for failing to provide any analysis of equivalent structures for the alleged means-plus-function limitations; and (4) for improperly reading a narrower function of a specific embodiment into the claim.   For at least these reasons, Holland's proposed claim constructions should be rejected.

Turning to non-infringement, Holland's Motion is woefully deficient of any admissible evidence or facts that show there is no genuine dispute as to any material fact, and the Motion may be denied on that basis alone.  Holland has simply failed to present *any* facts that show non-infringement, and, therefore, all facts concerning the operation of the accused Rail Vision system are still in dispute.   Furthermore, even if Holland's improper constructions are adopted, and Georgetown does not concede that they should be, Holland still fails to show no dispute of material facts of non-infringement for the accused Rail Vision System.  Finally, Holland fails to perform any doctrine of equivalents analysis, and thus, numerous questions of material fact still exist under that infringement doctrine.   For at least these reasons, Holland's Motion for non-infringement should be denied in its entirety.

Nonetheless, should the Court desire to construe the allegedly dispositive three terms at this time, Georgetown provides the below basis for its position that the ordinary and customary meaning of all terms should apply.

## II. CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The Court examines a patent's intrinsic evidence to define the patented invention's scope.  *Id.* at 1313-14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history.  *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267.  The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention.  *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms.  *Phillips*, 415 F.3d at 1314.  "[T]he context in which a term is used in the asserted claim can be highly instructive."  *Id.*  Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent."  *Id.*  Differences among claims, such as additional limitations in dependent claims, can provide further guidance.  *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v.Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope.  *Phillips*, 415 F.3d at 1316.  Although the Court generally presumes

terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed.Cir.2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer ... must be effected with 'reasonable clarity and deliberateness.'") (citations omitted). "Indeed, by distinguishing the claimed invention over the prior art, an

applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted).   "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

The patent in suit may contain means-plus-function limitations that require construction. Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112 ¶ 6. *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).  In relevant part, § 112 mandates that "such a claim limitation be construed to cover the corresponding structure ... described in the specification and equivalents thereof."  *Id.* (citing 35 U.S.C. § 112 ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

Construing a means-plus-function limitation involves two inquiries.   The first step requires "a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001).  Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof."  *Medtronic*, 248 F.3d at 1311.  A structure is corresponding "only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim."  *Id.*  Moreover, the focus of the corresponding structure inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function."  *Id.*

## III.  APPLICATION OF CLAIM CONSTRUCTION PRINCIPLES TO THE ALLEGEDLY DISPOSITIVE THREE TERMS

**A.   Holland Fails To Overcome The Presumption That The "Algorithm For" Limitation Of Claim 16 Is Not A Means-Plus-Function Limitation.**

Claim 16 does not recite a "means for" performing a function, which raises a presumption against construing the "algorithm" limitation under § 112 ¶ 6.[1] *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002) ("[A] claim term that does not use 'means' will trigger the rebuttable presumption that § 112 ¶ 6 does not apply.").  Holland fails to present any evidence to overcome the presumption that 112 ¶ 6 does not apply and, therefore, the presumption prevails.  *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-1372 (Fed. Cir. 2003) ("If the party who must bring forth evidence fails to proffer sufficient evidence to meet its burden, the presumption, either for or against the application of 112 (6) prevails.").

**1.   Holland Provides No Support For The Proposition That A Limitation Reciting "An Algorithm For" Should Be Construed As A Means-Plus-Function Limitation.**

Holland admits that claim 16 does not recite the "typical 'means for' language." Holland's Motion, p. 6.  Undeterred, Holland alleges that § 112 ¶ 6 applies because claim 16 "describes the intended result, but not how the result is achieved (e.g., an 'algorithm for …' rather than 'an algorithm that…')."  Not surprisingly, Holland provides no precedent or other support for its unique "for" versus "that" claiming convention.  More importantly, Holland's proposition ignores the appropriate test for determining whether § 112 ¶ 6 is invoked.  The proper test to invoke § 112 ¶ 6 is "the alleged means-plus-function claim element must *not* recite definite structure which performs the described function."  *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996).  Whether a claim recites definite structure to perform the

---

[1]   Holland's brief refers to the current version of 35 U.S.C. § 112(f); however, Georgetown believes that the prior version of § 112, in force at the time of issuance of the '329 Patent, is the appropriate version and for that reason, and for consistency with the cited case law, Georgetown's citations are to 35 U.S.C. § 112 ¶ 6.  The distinction is admittedly academic as the current version of §112(f) is substantially identical to the former § 112 ¶ 6.

function is evaluated based on the meaning of the claim as a whole, and whether the limitations suggest sufficiently definite structure to a person having ordinary skill in the art ("PHOSITA")[2]. *See Apex*, 325 F. 3d at 1374.   The fact that the algorithm limitation defines the algorithm in functional terms does not overcome the presumption that § 112 ¶ 6 should not apply.   *See Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("[T]he fact that a particular mechanism ... is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6)."); *Affymetrix, Inc. v. HYSEQ Inc.*, 132 F. Supp. 2d 1212, 1231 (N.D. Cal. 2001). As discussed below, claim 16 recites definite structure to perform the described functions and § 112 ¶ 6 does not apply.

### 2.     The Language Of Claim 16 Demonstrates That The Processor And Algorithm Limitations Are Definite Structures.

On its face, claim 16 recites "at least one processor."  That processor is further defined as including "an algorithm for detecting a misaligned or sunken tie plate of the railroad track bed." Holland does not, and indeed cannot, present any credible evidence that the "at least one processor" limitation describes anything other than a definite structure.  Again, the patentee did not claim "means for processing," but instead chose the noun, processor, to convey to a PHOSITA a definite structure.  *See Lighting World,* 382 F. 3d at 1359-61 (a "connector assembly for" was not means-plus-function because "connector" was a noun that connoted a meaning to a generic structure); *see also*, *Stragent, LLC v. Amazon.com, Inc.*, No. 6:10cv225 LED-JDL, 2011 WL 2199498, at *6-*7 (E.D. Tex., June 7, 2011) (the term "engine" was a noun understood to be a software program and § 112 ¶ 6 did not apply).

---

[2]   Holland does not apply the correct analysis of the "algorithm for" limitation and, likewise, does not supply any statement of the level of ordinary skill in the art.  For purposes of this Motion, Georgetown considers a PHOSITA to have a bachelor's level degree in electrical, electronic, computer, or mechanical engineering, computer science, image processing, or the equivalent on-the-job experience.  Georgetown reserves the right to revise this statement as discovery progresses.

Likewise, the patentee chose another noun, "algorithm," to also convey definite structure to a PHOSITA.  Indeed Holland's own statements underscore that a PHOSITA would understand the definite structure, as Holland itself is able to comprehend the plain meaning of algorithm as a "step-by-step process."  Holland's Motion, p. 6.  While that alone is likely sufficient structure, especially in the context of "wherein the processor includes an algorithm," in further refinement, claim 16 goes on to specify the steps (a)-(e) of the step-by-step process.  Thus, when read as a whole, in view of what the terms convey to a PHOSITA, claim 16 contains definite structures to perform the described functions and § 112 ¶ 6 is not applicable.

### 3.  When Read In Light Of The Specification, A PHOSITA Would Understand The Definite Structures Recited In The "Algorithm For" Limitation.

The specification also supports a finding that the processor and algorithm terms convey definite structures.  For example, '329 Patent,[3] col. 4, line 65 – col. 5, line 5, discloses the following exemplary "processor" structures:

> Among other common components, the processing device or computer 60 includes a microprocessor, inputs, outputs, and a data storage device 62…The processing device 60 can further include an input/display 68 for a track inspector to input and review data and to operate the disclosed inspection system 30.

In addition, the processor is disclosed as operating with "suitable software programs for storing and analyzing the various data obtained with the disclosed inspection system 30."  '329 Patent, col. 5, lines 5-7.  Again, such disclosure is sufficient for a PHOSITA to understand the definite structures claimed by the algorithm limitations, but once again, the '329 Patent disclosure does not stop there.  Instead, the '329 Patent discloses exemplary, commercially available, suitable software programs "such as Matrox MIL, Common VisionBlox, Labview, eVision, Halcon, and IVP Ranger," and provides a generic description of the kinds of software tools the processor may have, such as "Region of Interest (ROI) tools, filtering tools, blob tools, edge finders, histogram tools, and others."  '329 Patent, col. 5, lines 7-15.  In light of at least that disclosure, a PHOSITA

---

[3] For citations to the '329 Patent, see Holland's Motion, Ex. A.

GEORGETOWN RAIL EQUIPMENT COMPANY'S RESPONSE TO HOLLAND L.P.'S COMBINED MOTION FOR EARLY MARKMAN CLAIM CONSTRUCTION AND SUMMARY JUDGMENT OF NON-INFRINGEMENT - 7

would have no trouble discerning the definite structures conveyed by the "algorithm for" limitation and § 112 ¶ 6 is not applicable to its construction.

The prosecution history for claim 16 further supports that the algorithm elements are not means-plus-function elements.  For example, in the amendment adding steps (a)-(e) to claim 16, the applicant remarked that claim 16 was amended to "recite, in part, various steps in an algorithm for detecting a misaligned or sunken tie plate in the railroad track bed."  Declaration of Christopher Cuneo ("Cuneo Decl."), Ex. H, (GREX_PICS_000148).   In the Notice of Allowability, mailed 9/3/2009, the Examiner cited this same statement as the "Allowable Subject Matter" for claim 16.  Cuneo Decl., Ex. I, (GREX_PICS_000054).  Thus, neither the patentee, nor the Examiner treated these claim elements as means-plus-function claims during prosecution of the application that became the '329 Patent.

**B.      Even If Claim 16 Contains Means-Plus-Function Limitations, Holland Fails To Provide The Proper Construction Of Any Such Term.**

As noted above, Georgetown does not agree that any claim 16 limitations invoke § 112 ¶ 6.  Holland, however, asserts that the three allegedly dispositive terms require a § 112 ¶ 6 construction.  Nonetheless, Holland's proposed constructions are fatally flawed for failing to carry out the proper § 112 ¶ 6 constructions that Holland asserts are required.

**1.      Holland Fails To Perform Either Step Of The Appropriate Two-Step Analysis For An Alleged § 112 ¶ 6 Claim Limitation.**

Construing a means-plus-function limitation involves two inquiries.   The first step requires "a determination of the function of the means-plus-function limitation." *Medtronic,* 248 F.3d at 1311.   Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* Holland fails to perform either step and, for at least that reason, Holland's proposed constructions of the three allegedly dispositive terms are facially improper and should be rejected.

2.   **Holland Fails To Provide Any Analysis Of The Statutorily Required Equivalent Structures.**

On its face, § 112 ¶ 6 entitles a patentee to the "structure, material, or acts described in the specification *and equivalents thereof.*"  35 U.S.C. § 112 ¶ 6 (2004) (emphasis added).  For each proposed construction of the allegedly dispositive three terms, Holland fails to provide any analysis of any equivalent structures to those disclosed in the specification.  Likewise, Holland's proposed construction for each of the allegedly dispositive terms fails to incorporate any equivalent structures.  Holland's proposed constructions are improper for at least this reason as well.

3.   **Holland's Proposed Constructions Improperly Read A Narrower Function Of A Specific Embodiment Into The Claim.**

Finally, if the algorithm limitations are indeed found to be § 112 ¶ 6 limitations, Holland's proposed constructions improperly read a narrower function of a specific embodiment into the claim.  *See Wenger Mfg., Inc., v. Coating Machinery Systems, Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) (instructing that "[u]nder § 112, ¶ 6, a court may not import functional limitations that are not recited in the claims, or structural limitations from the written description that are unnecessary to perform the claimed functions.").  Each of Holland's proposed constructions for the three allegedly dispositive terms improperly import unnecessary limitations from a single embodiment disclosed in the written description.  As discussed in more detail below, the '329 Patent discloses numerous exemplary embodiments and at least six (6) commercially available software platforms capable of performing the claimed algorithm.  For at least these reasons, Holland's attempt to improperly restrict claim 16 should be rejected.

C.   **Proper Construction Of The Allegedly Dispositive Three Terms Requires That The Ordinary And Customary Meaning Be Applied For All Three Terms.**

Pursuant to the claim construction principles outlined in section **II** above, Georgetown respectfully submits that the three allegedly dispositive terms are properly construed using their ordinary and customary meaning as outlined below.  Once properly construed, it is also apparent

that the allegedly dispositive three terms do not show non-infringement of the accused system at all.

### 1.    "Analyzing A Frame."

| Georgetown's Proposed Construction | Holland's Proposed Construction |
|---|---|
| Plain and ordinary meaning or in the alternative, examining or evaluating. | The acts corresponding to this element are "averaging or summing X-Y coordinate pixel data within a contour (i.e., vertical) image." |

A PHOSITA reading claim 16, in light of the written description, would not need a construction for "a frame." First, the claim language itself uses the singular "a" to denote that a single frame is subject to the analysis. Further, as described in the written description, a "frame" is a single image (i.e., a "snapshot") taken by a camera or optical receiver. For example, '329 Patent, col. 4, line 37-43, discloses (emphasis added):

> As the disclosed inspection system 30 is moved along the track, *the cameras 50 capture an **image or frame** of the track bed at small, regular increments.* Preferably, the cameras 50 are capable of a substantially high **frame** rate, such as about 5405 **frames per second**.
> Each *still **image or frame*** captured by the cameras 50 is then filtered and processed….

As demonstrated in the example above, the written description consistently pairs "image or frame" and uses "frame" in the context of optical receivers or cameras, and, in some embodiments, a frame is one of those "about 5405" images captured every second. Furthermore, Holland has not advanced any evidence of disclaimer or disavowal for "frame" that would warrant a meaning other than the ordinary one. Thus, a PHOSITA would recognize a frame as a given one of the plurality of images captured by the cameras or optical receivers as the inspection system traverses the railroad.

Similarly, a PHOSITA would understand the phrase "analyzing a frame" to have its ordinary and accustomed meaning of performing analysis (i.e., examining or evaluating) on a single frame of the plurality of frames collected by the optical receiver. That can be illustrated by comparison to un-asserted claim 1, which claims a different algorithm, but also refers to analyzing frames. Specifically, claim 1 recites "(a) analyzing a first frame, one or more

intermediate frames and an end frame of the plurality of images." Thus, in comparison with claim 16, the claimed "analyzing a frame of the plurality of images" would be clearly understood to be an analysis of a single frame from the plurality, while claim 1 would be understood to involve an analysis of at least 3 frames of the plurality (the first one, the end one, and at least one intermediate one).

Finally, there is no merit to Holland's charges that there are "infinite" ways to analyze, or that no manner other than the one proposed by Holland is disclosed in the '329 Patent as the claim itself specifies the analysis. When read in in context of the claim, analyzing step (a) sets forth what is to be analyze (e.g., a single frame in claim 16, or at least 3 frames in claim 1) and the remainder of the steps (b)-(e) set forth additional particulars of the analysis performed. Holland's proposed construction is an improper attempt to import into the claim limitations from a particular embodiment disclosed in the specification. For at least these reasons, "analyzing a frame" requires no construction other than its ordinary and customary meaning to a PHOSITA.

### 2. "Region of Interest."

| Georgetown's Proposed Construction | Holland's Proposed Construction |
|---|---|
| Plain and ordinary meaning or in the alternative, a space or area of interest. | "a predefined area within the contour (i.e., vertical) image that is located below the top of the rail and above a crosstie." |

Again, a PHOSITA would not require a construction for the terms "region of interest" as it is clear from the ordinary and customary meaning of the claim language. The terms are used twice in claim 16, first in defining the particular frame to be analyzed in step (a) (i.e., one comprising a region of interest), and second in step (b) determining whether a tie-plate is present in the region of interest. Further, the specification makes clear that a region of interest is the area or space in an image that is relevant to the particular analysis being performed. Thus, and as noted by Holland, the region of interest can change size, location, and shape depending on the desired analysis.[4] *See, e.g.*, Holland's Motion, p. 9-11. A PHOSITA would know that when

---

[4]    Holland, however, improperly concludes that this breadth makes the terms "ambiguous," likely because Holland fails to perform any analysis of the understanding a PHOSITA would have of the terms.

GEORGETOWN RAIL EQUIPMENT COMPANY'S RESPONSE TO HOLLAND L.P.'S COMBINED MOTION FOR EARLY MARKMAN CLAIM CONSTRUCTION AND SUMMARY JUDGMENT OF NON-INFRINGEMENT - 11

crosstie spacing is relevant the region of interest may be as shown in FIGS. 4A-4C, when a break in a rail is relevant the region of interest may be as shown in FIGS. 6A-6C, and so forth for other features, and that the region of interest changes to accommodate the desired feature analysis.

As noted earlier, the specification also discloses that commercially available software programs with "Region of Interest (ROI)" tools are available for use with inspection system. *See, e.g.*, '329 Patent, col. 5, lines 5-15. Thus, a PHOSITA would be familiar with commonly available image processing software that allows a user to select particular portions or areas of interest in an image. For example, the Common VisonBlox software explicitly referenced in the written description, and available on or about the time of the '329 Patent priority date, advertised its support of "Areas of Interest (AOI)" in is display features. Cuneo Decl., Ex. A.

Once again, Holland's proposed construction fails for improperly importing limitations from a specific disclosed embodiment into the claim. Further, Holland has not advanced any evidence of disclaimer or disavowal regarding "region of interest" that would warrant a meaning other than the ordinary one. For at least these reasons, the ordinary and customary meaning of "region of interest" should apply to claim 16.

### 3. "Determining."

| Georgetown's Proposed Construction | Holland's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning or in the alternative, to conclude, establish, or ascertain. | The acts corresponding to this element are "comparing the average or sum of the X-Y coordinate pixel data within the region of interest to a value derived from averaging or summing X-Y coordinate pixel data with the region of interest when a tie plate is not present." |

No construction for the term "determining," is necessary. Determining is not used in claim 16, or the '329 Patent, in any special or unaccustomed way, and is understandable using its ordinary, English language meaning (e.g., concluding, establishing, or ascertaining). Holland's proposed language, which appears nowhere in the written description, once again improperly

imports limitations from a specific embodiment into the claim language[5] and, again, fails to advance any evidence of disclaimer or disavowal regarding "determining" that would warrant a meaning other than the ordinary one.

In addition, a PHOSITA would understand the examples discussed in the '329 Patent specification are but some, exemplary, ways of performing the claimed algorithm steps.  First, the '329 Patent explicitly says as much in col. 7, lines 22-37:

> In examples that follow, a number of such measurable aspects are discussed, and various techniques for analyzing the measurable aspects are disclosed….  In addition, it will be appreciated that other techniques known in the art for analyzing the image data can be used with the disclosed inspection system and associated methods.   Accordingly, the disclosed inspection system and associated methods are not intended to be limited to the measurable aspects and particular techniques described herein.

Second, as discussed previously, the '329 Patent discloses at least six different, commercially available, software platforms that can be used with the claimed at least one processor.  *See* '329 Patent, col. 5, lines 5-15.  At least four of those platforms advertised, at or about the priority date of the '329 Patent, tools for image processing that include:  "object search and recognition," Cuneo Decl., Ex. A; "finding simple objects," Cuneo Decl., Ex. B; "pattern matching," Cuneo Decl., Ex. C; "EasyObject is used for blob analysis …[and] is a convenient way to locate objects even without any previous knowledge of their shape, size and position," Cuneo Decl., Ex. D; and "EasyFind is designed to find one or more occurrences of a given pattern in a larger image," Cuneo Decl., Ex. E.  Absent a disavowal by the patentee, and again Holland has advanced no such evidence, the term "determining" is to be construed in its ordinary fashion in order to encompass any of the disclosed methods of image analysis.

---

[5]   After stating "using almost any region of interest other than that illustrated in FIG. 10 would likely fail to properly identify the presence of a tie-plate," Holland, somewhat perversely, imports limitations from an exemplary embodiment for determining crosstie spacing (FIGS. 4A-4C) using a region of interest that it just said would not locate a tie-pate.  Holland's Motion, p. 10.  Such analysis is illogical and facially flawed.

GEORGETOWN RAIL EQUIPMENT COMPANY'S RESPONSE TO HOLLAND L.P.'S COMBINED MOTION FOR EARLY MARKMAN CLAIM CONSTRUCTION AND SUMMARY JUDGMENT OF NON-INFRINGEMENT - 13

### IV.  HOLLAND FAILS TO PROVIDE ANY EVIDENCE OF NON-INFRINGEMENT

Despite this Court's warning that it will "look unfavorably on deficient Summary Judgment briefing,"[6] Holland submits a brief entirely bereft of any evidence of non-infringement.  Apparently, Holland moves the Court on the basis that "there is no evidence of infringement."  Holland's Motion, p. 1.  Be that as it may, as the movant, Holland is not excused from its burden of providing admissible, proper, summary judgment evidence to support its claim of non-infringement.  *See*, *e.g.*, EDTX Local Rule CV-56.  Surprisingly, Holland has only provided attorney arguments, not a single affidavit, document, declaration, or any other admissible evidence in support of its Motion.  Georgetown respectfully submits that Holland's Motion can be denied on that basis alone.  In addition, the following numerous other reasons demonstrate why the merits of Holland's attorney's arguments are flawed and its Motion should be denied.

### A.    Holland Has Not Shown That There Is No Genuine Dispute As To Any Material Fact.

The standard for granting summary judgment is, if the movant shows that there is no genuine dispute as to any material fact, the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  Holland bears the burden of showing absence of a material fact issue, and any doubt should be resolved against Holland.  *See*, *e.g.*, *A.B. Chance Co. v. RTE Corp.*, 854 F.2d 1307 (Fed. Cir. 1988).

#### 1.    Holland Has Failed To Present Any Facts That Show Non-Infringement, And All Facts Concerning The Operation Of The Accused Rail Vision System Are Still In Dispute.

Because its Motion lacks any evidentiary support, virtually the entire operation of the accused Rail Vision System is still in dispute.  Holland has presented no documents, no affidavits, no source code, and no evidence whatsoever of the operation of its accused Rail Vision System that demonstrates any non-infringing operation; Holland's Motion is at best premature and should be denied.

---

[6]    Dkt. 57, Order granting permission to file an early Motion for summary judgment of non-infringement.

GEORGETOWN RAIL EQUIPMENT COMPANY'S RESPONSE TO HOLLAND L.P.'S COMBINED MOTION FOR EARLY MARKMAN CLAIM CONSTRUCTION AND SUMMARY JUDGMENT OF NON-INFRINGEMENT - 14

   **2.     Even If Holland's Constructions Are Adopted, Holland Fails To Provide Any Undisputed Fact Evidence Of Non-Infringement.**

Even if this Court were to adopt Holland's claim constructions in their entirety, disputed issues of fact still remain and Holland's motion should be denied.  For example, Holland's Motion vaguely asserts that its line scan system "looks" at the image data and, therefore, does not use X-Y coordinate pixel data.  Motion, p. 14.  However, Holland's General Manager/Vice-President of the Railway Measurement Systems has testified and shed some light on the alleged "looking" stating that to determine if a tie-plate is present, Holland's Rail Vision System "look[s] at the greyscale imaging; and they determine in their software if a tie plate is present." Cuneo Decl., Ex. F, p. 17, lines 4-6.  Greyscale data is, of course, pixel data.  Cuneo Decl., Ex. G.  Therefore, it is still a disputed question whether the pixel data that the accused Rail Vision System analyzes is in fact done through an X-Y coordinate system; Holland certainly has not presented any evidence to the contrary.

**B.     Holland Fails To Present Any Evidence That It Does Not Infringe Under The Doctrine Of Equivalents.**

Holland's Motion fails to even mention the doctrine of equivalents ("DOE") and provides no element-by-element discussion concerning equivalents.  Thus, there are myriad questions of fact concerning whether the accused Rail Vision System infringes under the DOE.  Holland's Motion should be denied for at least that reason as well.

## V.  CONCLUSION

For at least the foregoing reasons Georgetown asks that its constructions for the three allegedly dispositive terms be adopted, that Holland's Motion be denied in its entirety, and any other remedy that the Court finds appropriate.

//

//

//

//

DATED THIS 6th day of January, 2014.

PARSONS BEHLE & LATIMER


By  */s/ Christopher Cuneo*
     Christopher Cuneo (admitted E.D. Texas)
     Dana M. Herberholz (admitted E.D. Texas)
     PARSONS BEHLE & LATIMER
     960 Broadway Avenue, Suite 250
     Boise, Idaho 83706
     Telephone:  (208) 562-4900
     Facsimile:  (208) 562-4901
     Email:  ccuneo@parsonsbehle.com
            dherberholz@parsonsbehle.com

     Trey Yarbrough, Texas Bar No. 22133500
     Debby E. Gunter, Texas Bar No. 24012752
     YARBROUGH WILCOX GUNTER, PLLC
     100 E. Ferguson Street, Suite 1015
     Tyler, Texas 75702
     Telephone:  (903) 595-3111
     Facsimile:  (903) 595-0191
     Email:  trey@yw-lawfirm.com
            debby@yw-lawfirm.com

     Attorneys for Plaintiff
     Georgetown Rail Equipment Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of January, 2014, I electronically filed the within and foregoing instrument with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to all counsel who have entered an appearance in this action.


*/s/ Christopher Cuneo*
Christopher Cuneo