UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GEORGETOWN RAIL EQUIPMENT COMPANY, a Texas corporation, <br><br>              Plaintiff, <br><br> v. <br><br> HOLLAND L.P., an Illinois corporation, <br><br>              Defendant. | Case No. 6:13-CV-366 <br><br><br> GEORGETOWN RAIL EQUIMENT COMPANY'S P.R. 4-5(a) OPENING *MARKMAN* CLAIM CONSTRUCTION BRIEF |

**GEORGETOWN RAIL EQUIMENT COMPANY'S P.R. 4-5(a) OPENING *MARKMAN* CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................... i

I. INTRODUCTION ............................................................................................................ 1

II. BRIEF OVERVIEW OF THE PATENTED TECHNOLOGY ............................................... 1

III. CLAIM CONSTRUCTION PRINCIPLES .......................................................................... 3

IV. LEVEL OF ORDINARY SKILL IN THE ART .................................................................... 6

V. APPLICATION OF CLAIM CONSTRUCTION PRINCIPLES TO THE CLAIM TERMS ... 7

    A.  Agreed Terms ............................................................................................................... 7

        1.  "misaligned" ......................................................................................................... 7

    B.  Disputed Terms ............................................................................................................ 8

        1.  The Three Allegedly Dispositive Terms .............................................................. 8

        2.  "determining" ....................................................................................................... 8

            a.  Holland Fails To Overcome The Presumption That The "Algorithm For" Limitation Of Claim 16 Is Not A Means-Plus-Function Limitation. ............................................... 10

            b.  The Proper Test To Invoke § 112 ¶ 6 Is To Evaluate The Definite Structures Recited In The Claim .......................................................................................................................... 10

            c.  The Language Of Claim 16 Demonstrates That The Processor And Algorithm Limitations Are Definite Structures. ................................................................................. 11

            d.  When Read In Light Of The Specification, A PHOSITA Would Understand The Definite Structures Recited In The "Algorithm For" Limitation. ...................................... 11

            e.  Holland's Proposed Construction Improperly Reads A Narrower Function Of A Specific Embodiment Into The Claim. ............................................................................. 12

        3.  "crosstie contour" ............................................................................................... 13

            a.  There Is No Dispute Over The Term "Crosstie" ....................................................... 13

            b.  Contour Should Have Its Plain And Ordinary Meaning ............................................ 13

            c.  Holland's Proposed Construction Of Crosstie Contour Improperly Imports Limitations From The Specification ................................................................................. 14

        4.  "tie plate contour" .............................................................................................. 14

            a.  There Is No Dispute Over The Term "Tie Plate" ....................................................... 14

            b.  Contour Should Have Its Plain And Ordinary Meaning ............................................ 15

            c.  Holland's Proposed Construction Of Tie Plate Contour Improperly Imports Limitations From The Specification ................................................................................. 15

        5.  "comparing" ....................................................................................................... 15

            a.  "Comparing" Is Given Its Ordinary And Accustomed Meaning In The Specification 15

        6.  "orientation" ....................................................................................................... 16

            a.  "Orientation" Is Given Its Ordinary And Accustomed Meaning In The Specification 16

        7.  "determining" ..................................................................................................... 17

VI. CONCLUSION................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Affymetrix, Inc. v. HYSEQ Inc.*, 132 F. Supp. 2d 1212 (N.D. Cal. 2001) ..................................... 11

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003) .......................................... 3, 6

*Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003) ....................................... 10

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001) . 3

*Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419 (Fed. Cir. 1997) ............................................. 5

*CCS Fitness v. Brunswick Corp.*, 288 F.3d 1369 (Fed. Cir. 2002)............................................. 8, 10

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002)...................................... 10

*Cole v. Kimberly-Clark Corp.*, 102 F.3d 524 (Fed. Cir. 1996).................................................... 10

*Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988) .............................. 5

*Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) ......................... 6

*Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983) ................................. 6

*Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367 (Fed. Cir. 2004) ........ 4

*Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996) .................................. 10

*Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352 (Fed.Cir.2004)...................................... 5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) .... 3

*Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295 (Fed. Cir. 2004)......................... 4

*Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004)............... 10, 11

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) ......................................... 4

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303 (Fed. Cir. 2001)............. 6

*Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) ........................................... 5, 14

*Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ........................................... 5

*Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1381–82 (Fed. Cir.
        1983) .............................................................................................................................. 6

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .................................................... 3, 4, 5, 6

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001).... 4

*Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372 (Fed. Cir. 1988).................................................. 5

*Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989 (Fed. Cir. 2003) ..................... 5

*Stragent, LLC v. Amazon.com, Inc.*, No. 6:10cv225 LED-JDL, 2011 WL 2199498, at *6-*7 (E.D.
        Tex., June 7, 2011).......................................................................................................... 11

*Teleflex. Inc. v.Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ........................................... 4

*Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ........................................... 4

*Wenger Mfg., Inc., v. Coating Machinery Systems, Inc.*, 239 F.3d 1225 (Fed. Cir. 2001) ........... 13

**Statutes**

35 U.S.C. § 112 ..................................................................................................................... passim

# I.  INTRODUCTION

Before the Court is Georgetown Rail Equipment Company's ("Georgetown") Opening *Markman* Claim Construction Brief.  The Court already has before it Holland L.P.'s ("Holland") Combined Motion for Early *Markman* Claim Construction and Summary Judgment of Non-Infringement ("Holland's Motion") in which the parties proposed constructions for three (3) allegedly dispositive terms.  *See* Dkt. 78, 80, and 83.

As in the prior briefing for Holland's Motion, Georgetown respectfully submits that the claims do not require construction beyond the ordinary and customary meanings that a person having ordinary skill in the art ("PHOSITA") would comprehend.  Holland's proposed claim constructions, however, are complicated, convoluted, and would only serve to confuse the jury.  Furthermore, Holland's constructions are improper in general for failing to evaluate the claims from the viewpoint of a person of ordinary skill in the art.  In addition, Holland's proposed constructions are improper for at least the following reasons:  (1) for failing to overcome the stong presumption that the "algorithm" limitations are not means-plus-function limitations; (2) for failing to perform the proper two-step analysis for the alleged means-plus-function limitations; and (3) for improperly reading a narrower function of a specific embodiment into the claim.  For at least these reasons, Holland's proposed claim constructions should be rejected.

## II. BRIEF OVERVIEW OF THE PATENTED TECHNOLOGY

Georgetown is a privately held Texas corporation that creates cutting-edge equipment for use in the railroad industry.  Georgetown owns over 50 patents and pending applications worldwide including the presently asserted U.S. Patent No. 7,616,329 ("the '329 Patent").  Ex. 1.[1]  The '329 Patent discloses a system and method for inspecting railroad track.  Ex. 1, Abstract.  As shown in '329 Patent FIG. 2, reproduced below, the disclosed system includes light generators (*e.g.*, lasers 40), optical receivers (*e.g.*, cameras 50), and a processor (not shown in FIG. 2).  Ex. 1, col. 2, lines 14-21.  The lasers are positioned adjacent to the track 12.  *Id.*  In

---

[1] Unless otherwise indicated, all exhibits refer to the Declaration of Christopher Cuneo in Support of Georgetown Rail Equipment Company's Opening P.R. 4-5(a) Opening *Markman* Claim Construction Brief ("Cuneo Decl.").

GEORGETOWN  RAIL  EQUIMENT  COMPANY'S  P.R.  4-5(a)  OPENING  *MARKMAN*
CLAIM CONSTRUCTION BRIEF - 1

some embodiments, the laser emits a beam of light 42 across the railroad track, and the camera 50 captures images of the railroad track having the beam of light emitted thereon.  *Id.*  The



FIG. 2

processor formats the images so that they can be analyzed to determine various measurable aspects of the railroad track.  *Id.*

As shown in FIG. 2, a typical railroad track includes a number of crossties 10 that support generally parallel rails 12 which are held on the crossties 10 by driving spikes 16 (not numbered in FIG. 2) through a tie plate 14.  Generally, there are four tie plates 14 per crosstie 10, two on each "inside" edge of the rails 12, and two on each "outside" edge of the rails 12.  *See, e.g.*, Ex. 1, FIGS. 1-2.  Relevant to '329 Patent claim 16, the sole asserted claim, one of the measurable aspects is to determine whether a tie plate 14 missing, misaligned, or sunken (i.e., penetrating below the top surface of a crosstie 10).  Ex. 1, col. 2, lines 25-26.

The claimed system also includes a processing device 60 that is further disclosed to include, in some embodiments, "a computer having a fast processor, such as an Intel Pentium 4 processor capable of running at 2.8 GHZ."  Ex. 1, col. 5, lines 17-20.  In addition, the processor is disclosed as

> operat[ing] with suitable software programs for storing and analyzing the various data obtained with the disclosed inspection system 30. For example, the processing device 60 can have any suitable image processing software, such as Matrox MIL, Common VisionBlox, Labview, eVision, Halcon, and IVP Ranger. For example, the processing device 60 can have image processing tools known in the art for analyzing image data from the cameras 50 such as Region of Interest (ROI) tools, filtering tools, blob tools, edge finders, histogram tools, and others.

Ex. 1, col. 5, lines 5-15.

Through the use of the disclosed system of lights sources, light receivers, and a processor running image processing software, a number of measurable aspects of the railroad track can be determined. The '329 Patent discloses examples such as measuring the spacing between crossties 10 (Ex. 1, FIGS. 4A-4C), measuring the angles of crossties with respect to the rail (Ex. 1, FIG. 5), determining a break in a rail (Ex. 1, FIG. 6A-6C), determining rail wear (Ex. 1, FIGS. 7A-7B), determining crosstie defects (Ex. 1, FIG. 8), determining rail gauge or crosstie length (Ex. 1, FIG. 8), determining the height of the ballast relative to the rail (Ex. 1, FIG. 8), detecting raised spikes (Ex. 1, FIG. 9), and detecting missing, misaligned, or sunken tie plates (Ex. 1, FIG. 10). The last example, that of tie plate alignment, being relevant to asserted claim 16.

### III. CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id*. at 1313-14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id*. Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id*. Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id*.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be

read into the claims." *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed.Cir.2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer ... must be effected with 'reasonable clarity and deliberateness.'") (citations omitted). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

When a patent contains means-plus-function limitations they may require construction. Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112 ¶ 6. *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, § 112 mandates that "such a claim limitation be construed to cover the corresponding structure ... described in the specification and equivalents thereof." *Id.* (citing 35 U.S.C. § 112 ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written

description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id.*

Construing a means-plus-function limitation involves two inquiries.  The first step requires "a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001).  Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Medtronic*, 248 F.3d at 1311.  A structure is corresponding "only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.*  Moreover, the focus of the corresponding structure inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.*

## IV.  LEVEL OF ORDINARY SKILL IN THE ART

As discussed above, the claim terms are given their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003)  "Factors that may be considered in determining level of ordinary skill in the art include: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983) (citing *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1381–82 (Fed. Cir. 1983)). These factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art. *Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

Evaluating these factors, it is understood that at least one of the inventors for the '329 Patent held, at the time of invention, a Bachelor's of Science degree in Mechanical Engineering

from Texas A&M University.  Ex. 2, p. 2.  The types of problems encountered in the art, and the prior solutions to those problems can be gleaned from the intrinsic evidence in the '329 prosecution history.  For example, the '329 Patent describes the logistical and organizational problems of inspecting and keeping data on the millions of crossties in place in North American railroads.  Ex. 1, col. 1, lines 35-52.  The '329 Patent also discloses the prior art solutions involving handheld devices, lasers, and software to analyze and organize the track data.  Ex. 1, col. 1, line 53 – col. 2, line 6.  In addition, the prior art discussed during prosecution included the Shoutaro and Holmes references which were respectively characterized by the Examiner as disclosing "optically inspecting a railroad track and bed" and "a laser-based measuring system."  Ex. 3, at GREX_PICS_000192.  Further, the Examiner noted that both Shoutaro and Holmes included processors to "analyze the images and determine one or more characteristics of the surface being inspected."  *Id.*  Finally, the current VP of Engineering for Georgetown, the position previously held by '329 Patent co-inventor Villar, holds a Bachelor's and Master's degree in Civil Engineering from the University of Delaware.  Ex. 4, p. 40, lines 1-8.  Based at least on these factors, Georgetown respectfully submits that a PHOSITA has a Bachelor's level degree in electrical, electronic, computer, mechanical, or civil engineering, or in computer science, image processing, or the equivalent on-the-job experience.

## V.  APPLICATION OF CLAIM CONSTRUCTION PRINCIPLES TO THE CLAIM TERMS

### A.  Agreed Terms

#### 1.  "misaligned"

| Georgetown Proposed Construction | Holland Proposed Construction |
|---|---|
| Misaligned = Plain and ordinary meaning ("POM") or in the alternative, incorrectly or improperly aligned. | Misaligned = not being aligned with another structure. |

Although the parties indicated disagreement over all terms in their P.R. 4-3 Joint Claim Construction Chart (Dkt. 79-1 and Ex. 5), on further consideration, Georgetown understands the competing definitions for the term "misaligned" to be substantially the same.  Therefore,

Georgetown does not object if the Court agrees to adopt Holland's proposed construction for misaligned of "not being aligned with another structure."

**B.      Disputed Terms**

**1.      The Three Allegedly Dispositive Terms**

The Court already has before it the parties' proposed constructions for three (3) allegedly dispositive terms.  See Dkt. 78, 80, and 83.  Georgetown incorporates here its positions for those terms as set forth in the parties' P.R. 4-3 Joint Claim Construction Chart (Ex. 5).

**2.      "determining"**

| Georgetown Proposed Construction | Holland Proposed Construction |
|---|---|
| Determining = POM or in the alternative, to conclude, establish, or ascertain. | Determining = This element is governed by 35 U.S.C. § 112(6).  The acts corresponding to this element are: (1) for a cross tie contour – "filtering and image processing of pixel values within a crosstie region of interest that contains a crosstie, spikes and tie plates, to provide a partial contour image consisting of only two pixel values (i.e., dark or light)"; and (2) for a tie plate contour – "filtering and image processing pixel values within a tie plate region of interest to provide a partial contour image consisting of only two pixel values (i.e., dark or light)." |

There is a "heavy presumption" that claim term carries its ordinary and customary meaning.  *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1356 (Fed. Cir. 2002).  Holland cannot overcome this heavy presumption by simply pointing to the preferred embodiment or other structure steps disclosed in the intrinsic evidence.  *Id*.  Georgetown respectfully submits that "determining" should be construed the same here as it argued in the early *Markman* briefing. *See*, Dkt. 80, p. 12-13.  No construction for the term "determining," is necessary.  Determining is not used in claim 16, or the '329 Patent, in any special or unaccustomed way, and is understandable using its ordinary, English language meaning (e.g., concluding, establishing, or ascertaining).

Holland's proposed language, which appears nowhere in Holland's suggested form in the written description, improperly imports limitations from specific embodiments into the claim language and Holland has yet to advance any evidence of disclaimer or disavowal regarding "determining" that would warrant a meaning other than the ordinary one.

In addition, a PHOSITA would understand the examples discussed in the '329 Patent specification are but some, exemplary, ways of performing the claimed algorithm steps.  First, the '329 Patent explicitly says as much in col. 7, lines 22-37:

> In examples that follow, a number of such measurable aspects are discussed, and various techniques for analyzing the measurable aspects are disclosed….  In addition, it will be appreciated that other techniques known in the art for analyzing the image data can be used with the disclosed inspection system and associated methods.  Accordingly, the disclosed inspection system and associated methods are not intended to be limited to the measurable aspects and particular techniques described herein.

Second, as discussed previously, the '329 Patent discloses at least six different, commercially available, software platforms that can be used with the claimed at least one processor.  *See* Ex. 1, col. 5, lines 5-15.  At least four of those platforms advertised, at or about the priority date of the '329 Patent, tools for image processing that include:  "object search and recognition," (Dkt. 80-2); "finding simple objects," (Dkt. 80-3); "pattern matching," (Dkt. 80-4); "EasyObject is used for blob analysis …[and] is a convenient way to locate objects even without any previous knowledge of their shape, size and position," (Dkt. 80-5); and "EasyFind is designed to find one or more occurrences of a given pattern in a larger image," (Dkt. 80-6). Thus, the '329 Patent discloses numerous ways of "determining" measurable characteristics of a railroad.  Absent a disavowal by the patentee, and again Holland has yet to advance such evidence, the term "determining" is to be construed in its ordinary fashion in order to encompass any of the disclosed methods of image analysis.

### a.    Holland Fails To Overcome The Presumption That The "Algorithm For" Limitation Of Claim 16 Is Not A Means-Plus-Function Limitation.

Georgetown respectfully submits that Holland's position that claim 16 invokes 35 U.S.C. § 112, sixth paragraph, ("§112 ¶ 6") is improper for the reasons set forth in the previous early *Markman* briefing.  *See*, Dkt. 80, p. 5-9.  Briefly, claim 16 does not recite a "means for" performing a function, which raises a presumption against construing the "algorithm" limitation under § 112 ¶ 6.  *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002) ("[A] claim term that does not use 'means' will trigger the rebuttable presumption that § 112 ¶ 6 does not apply.").  Holland as yet has failed to present any evidence to overcome the presumption that 112 ¶ 6 does not apply and, therefore, the presumption prevails.  *Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-1372 (Fed. Cir. 2003) ("If the party who must bring forth evidence fails to proffer sufficient evidence to meet its burden, the presumption, either for or against the application of 112 (6) prevails.").

### b.    The Proper Test To Invoke § 112 ¶ 6 Is To Evaluate The Definite Structures Recited In The Claim

The proper test to invoke § 112 ¶ 6 is "the alleged means-plus-function claim element must *not* recite definite structure which performs the described function."  *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996).  Whether a claim recites definite structure to perform the function is evaluated based on the meaning of the claim as a whole, and whether the limitations suggest sufficiently definite structure to a person having ordinary skill in the art ("PHOSITA").  *See Apex*, 325 F. 3d at 1374.  The fact that the algorithm limitation defines the algorithm in functional terms does not overcome the presumption that § 112 ¶ 6 should not apply.  *See Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("[T]he fact that a particular mechanism ... is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6).");  *Affymetrix, Inc. v. HYSEQ Inc.*, 132 F. Supp. 2d 1212,

1231 (N.D. Cal. 2001).  As discussed below, claim 16 recites definite structure to perform the described functions and § 112 ¶ 6 does not apply.

      c.      **The Language Of Claim 16 Demonstrates That The Processor And Algorithm Limitations Are Definite Structures.**

On its face, claim 16 recites "at least one processor."  That processor is further defined as including "an algorithm for detecting a misaligned or sunken tie plate of the railroad track bed."  Holland has not, and indeed cannot, present any credible evidence that the "at least one processor" limitation describes anything other than a definite structure.  Again, the patentee did not claim "means for processing," but instead chose the noun, processor, to convey to a PHOSITA a definite structure.  *See Lighting World,* 382 F. 3d at 1359-61 (a "connector assembly for" was not means-plus-function because "connector" was a noun that connoted a meaning to a generic structure); *see also, Stragent, LLC v. Amazon.com, Inc.,* No. 6:10cv225 LED-JDL, 2011 WL 2199498, at *6-*7 (E.D. Tex., June 7, 2011) (the term "engine" was a noun understood to be a software program and § 112 ¶ 6 did not apply).

Likewise, the patentee chose another noun, "algorithm," to also convey definite structure to a PHOSITA.  Indeed Holland's own statements underscore that a PHOSITA would understand the definite structure, as Holland itself is able to comprehend the plain meaning of algorithm as a "step-by-step process."  Dkt. 78, p. 6.  While that alone is likely sufficient structure, especially in the context of "wherein the processor includes an algorithm," in further refinement, claim 16 goes on to specify the steps (a)-(e) of the step-by-step process.  Thus, when read as a whole, in view of what the terms convey to a PHOSITA, claim 16 contains definite structures to perform the described functions and § 112 ¶ 6 is not applicable.

      d.      **When Read In Light Of The Specification, A PHOSITA Would Understand The Definite Structures Recited In The "Algorithm For" Limitation.**

The specification also supports a finding that the processor and algorithm terms convey definite structures.  For example, '329 Patent (Ex. 1), col. 4, line 65 – col. 5, line 5, discloses the following exemplary "processor" structures:

> Among other common components, the processing device or
> computer 60 includes a microprocessor, inputs, outputs, and a data
> storage device 62…The processing device 60 can further include
> an input/display 68 for a track inspector to input and review data
> and to operate the disclosed inspection system 30.

In addition, the processor is disclosed as operating with "suitable software programs for storing and analyzing the various data obtained with the disclosed inspection system 30." Ex. 1, col. 5, lines 5-7.  Again, such disclosure is sufficient for a PHOSITA to understand the definite structures claimed by the algorithm limitations, but once again, the '329 Patent disclosure does not stop there.  Instead, the '329 Patent discloses exemplary, commercially available, suitable software programs "such as Matrox MIL, Common VisionBlox, Labview, eVision, Halcon, and IVP Ranger," and provides a generic description of the kinds of software tools the processor may have, such as "Region of Interest (ROI) tools, filtering tools, blob tools, edge finders, histogram tools, and others."  Ex. 1, col. 5, lines 7-15.  In light of at least that disclosure, a PHOSITA would have no trouble discerning the definite structures conveyed by the "algorithm for" limitation and § 112 ¶ 6 is not applicable to its construction.

The prosecution history for claim 16 further supports that the algorithm elements are not means-plus-function elements.  For example, in the amendment adding steps (a)-(e) to claim 16, the applicant remarked that claim 16 was amended to "recite, in part, various steps in an algorithm for detecting a misaligned or sunken tie plate in the railroad track bed." Dkt. 80-9, at GREX_PICS_000148.  In the Notice of Allowability, mailed 9/3/2009, the Examiner cited this same statement as the "Allowable Subject Matter" for claim 16.   Dkt. 80-10, at GREX_PICS_000054.  Thus, neither the patentee, nor the Examiner treated these claim elements as means-plus-function claims during prosecution of the application that became the '329 Patent.

### e.   Holland's Proposed Construction Improperly Reads A Narrower Function Of A Specific Embodiment Into The Claim.

Finally, if the algorithm limitations are indeed found to be § 112 ¶ 6 limitations, Holland's proposed construction improperly reads a narrower function of a specific embodiment into the claim.  *See Wenger Mfg., Inc., v. Coating Machinery Systems, Inc.*, 239 F.3d 1225, 1233

(Fed. Cir. 2001) (instructing that "[u]nder § 112, ¶ 6, a court may not import functional limitations that are not recited in the claims, or structural limitations from the written description that are unnecessary to perform the claimed functions.").  Holland's proposed construction for "determining" improperly imports unnecessary limitations from a single embodiment disclosed in the written description.  As discussed above, the '329 Patent discloses numerous exemplary embodiments and at least six (6) commercially available software platforms capable of performing the claimed algorithm.  For at least these reasons, Holland's attempt to improperly restrict claim 16 should be rejected.

     3.     **"crosstie contour"**

| Georgetown Proposed Construction | Holland Proposed Construction |
|---|---|
| Crosstie contour = POM or in the alternative, an outline, an edge, or a line that represents the profile of the crosstie. | Crosstie contour = "a partial filtered contour image derived from the cross tie region of interest and only consisting of two pixel values (i.e., dark and light)." |

### a.     There Is No Dispute Over The Term "Crosstie"

The parties, apparently, do not disagree that a PHOSITA would understand what the term crosstie means, as both proposed constructions include the term without further definition. Further, the specification provides description of crossties and several figures of the same.  See, e.g., Ex. 1, col. 1, lines 22-38; FIGS. 1-2, item 10.  For example, crossties are explained as being "laid on the ballast layer" and having "two parallel steel rails" attached to them, and that "the majority of crossties in service are made of wood," and that "crossties maintain the gage or lateral spacing of the rails," and, that "crossties distribute the axel loads from the trains to the ballast below."  *Id.*  Thus, crosstie is generally understood by a PHOSITA, and the construction of "crosstie contour" hinges on the meaning of contour.

### b.     Contour Should Have Its Plain And Ordinary Meaning

Contour should have its plain and ordinary meaning.  First, "contour" is consistently used in the specification in its ordinary manner to refer to an outline, edge, or surface of another object.  For example, "beam 42 produces a projected line L, shown in FIG. 2, on the track bed that follows the ***contours of the surfaces and components*** of the track bed."  Ex. 1, col. 3, lines

45-47 (emphasis added).  Similarly, "the projected line L shown in FIG. 2 follows the **contours of the surface and components** of the track bed."  Ex. 1, col. 5, lines 33-35 (emphasis added). Likewise, "[e]ach still image or frame captured by the cameras 50 is then filtered and processed to isolate the **contoured laser line L projected on the track bed**."  Ex. 1, col. 4, lines 43-45 (emphasis added).  Thus, as used in the specification, and as it would convey to a PHOSITA, a contour is the outline, edge, or line that represents a profile of an object.

Second, the patentee never disclaimed any portion of the term contour.  Nothing in the prosecution history for the '329 Patent shows any distinguishing over prior art, disavowal of the plain and ordinary meaning, or other mention of the term contour.  Absent some showing of a clear and unambiguous disavowal, the term contour is entitled to its plain and ordinary meaning. See, e.g., *Middleton Inc.*, 311 F.3d at 1388.

### c.      Holland's Proposed Construction Of Crosstie Contour Improperly Imports Limitations From The Specification

Holland's proposed construction, again, improperly imports limitations from a single, exemplary, embodiment into the construction of "crosstie contour."  As discussed above, the '329 Patent discloses numerous exemplary embodiments and at least six commercially available software platforms with various image processing tools capable of analyzing image data corresponding to a contour of a crosstie or other object. *See, e.g.,* Dkt. 80-2 -- 80-6.  For at least these reasons, Holland's attempt to improperly restrict claim 16 should be rejected.

### 4.      "tie plate contour"

| Georgetown Proposed Construction | Holland Proposed Construction |
|---|---|
| tie plate contour = POM or in the alternative, an outline, an edge, or a line that represents the profile of the tie plate. | tie plate contour = "a partial filtered contour image derived from the tie plate region of interest and only consisting of two pixel values (i.e., dark and light)." |

### a.      There Is No Dispute Over The Term "Tie Plate"

Again, the parties, apparently, do not disagree that a PHOSITA would understand what the term tie plate means, as, again, both proposed constructions include the term without further definition.  Further, the specification provides description of tie plates and several figures of the

same.  *See, e.g*., Ex. 1, col. 3, line 43; FIGS. 1-2, item 14.  Thus, tie plate is generally understood by a PHOSITA, and the construction of "tie plate contour" hinges on the meaning of contour.

### b.    Contour Should Have Its Plain And Ordinary Meaning

As discussed above, contour should have its plain and ordinary meaning.  See, section **V.B.3.b**, above.

### c.    Holland's Proposed Construction Of Tie Plate Contour Improperly Imports Limitations From The Specification

Holland's proposed construction, again, improperly imports limitations from a single, exemplary, embodiment into the construction of "tie plate contour."  As discussed above, the '329 Patent discloses numerous exemplary embodiments and at least six commercially available software platforms with various image processing tools capable of analyzing image data corresponding to a contour of a tie plate or other object.  *See, e.g.,* Dkt. 80-2 -- 80-6.  For at least these reasons, Holland's attempt to improperly restrict claim 16 should be rejected.

### 5.    "comparing"

| Georgetown Proposed Construction | Holland Proposed Construction |
|---|---|
| comparing = POM or in the alternative, noting or examining the similarities and differences of. | comparing = this element is governed by 35 U.S.C. § 112(f) and is indefinite. |

### a.    "Comparing" Is Given Its Ordinary And Accustomed Meaning In The Specification

No construction for the term "comparing," is necessary.  Comparing is not used in claim 16, or the '329 Patent, in any special or unaccustomed way, and is understandable using its ordinary, English language meaning (*i.e.*, noting or examining the similarities and differences of).  For example, in an example discussing determining whether a rail is worn, the '329 Patent discloses "[a]s would be apparent to one of ordinary skill in the art having benefit of this disclosure, rail wear could also be determined [by] (sic) comparing frames taken at different times, but at the same position along a track bed."  Ex. 1, col. 9, lines 25-29.  Similarly, "[a] misaligned tie plate can be determined by line fitting the portion of the contour of the tie plate and comparing the orientation of the line to that of the crosstie, for example."  Ex. 1, col. 10, lines 19-22.  Thus, as used in the specification, and as it would convey to a PHOSITA,

comparing means to make a comparison – *i.e.*, noting or examining the similarities and differences of.

Again, the patentee never disclaimed any portion of the term comparing.  Nothing in the prosecution history for the '329 Patent shows any distinguishing over prior art, disavowal of the plain and ordinary meaning, or other mention of the term comparing.  Absent some showing of a clear and unambiguous disavowal, the term comparing is entitled to its plain and ordinary meaning.

Finally, to the extent Holland's position is understood, it is without merit.  As noted above, in sections **V.B.2.a.-e.**, claim 16 is not a means-plus-function claim and Holland's analysis is fatally flawed.  Furthermore, to the extent that Holland is going to raise issues of indefiniteness under 35 U.S.C § 112, ¶2, Georgetown will address any such issues in a responsive submission to the Court.  As apparent from the above, Georgetown submits that claim 16 is definite.

      6.       "orientation"

| Georgetown Proposed Construction | Holland Proposed Construction |
| --- | --- |
| orientation = POM or in the alternative, the position or location of. | orientation = this element, in conjunction with a tie plate, is in indefinite. |

      a.       **"Orientation" Is Given Its Ordinary And Accustomed Meaning In The Specification**

No construction for the term "orientation," is necessary.  Orientation is not used in claim 16, or the '329 Patent, in any special or unaccustomed way, and is understandable using its ordinary, English language meaning (e.g., the position or location of).  For example, in an example discussing determining whether a crosstie has a defect, the '329 Patent discloses "the computer analysis can determine the depth of the defect, for example, when the orientation of the defect allows light from the laser to be projected within the defect and to be captured by the camera."  Ex. 1, col. 9, lines 44-47.  Similarly, "[a] misaligned tie plate can be determined by line fitting the portion of the contour of the tie plate and comparing the orientation of the line to

that of the crosstie, for example." Ex. 1, col. 10, lines 19-22.  Thus, as used in the specification, and as it would convey to a PHOSITA, orientation means the position or location of.

Again, the patentee never disclaimed any portion of the term orientation.  Nothing in the prosecution history for the '329 Patent shows any distinguishing over prior art, disavowal of the plain and ordinary meaning, or other mention of the term orientation.  Absent some showing of a clear and unambiguous disavowal, the term orientation is entitled to its plain and ordinary meaning.

Finally, to the extent Holland's position is understood, it is without merit.  As noted above, in sections **V.B.2.a.-e.**, claim 16 is not a means-plus-function claim and Holland's analysis is fatally flawed. Furthermore, to the extent that Holland is going to raise issues of indefiniteness under 35 U.S.C § 112, ¶2, Georgetown will address any such issues in a responsive submission to the Court.  As apparent from the above, Georgetown submits that claim 16 is definite.

### 7.    "determining"

| Georgetown Proposed Construction | Holland Proposed Construction |
|---|---|
| Determining = POM or in the alternative, to conclude, establish, or ascertain. | Determining = - This element is governed by 35 U.S.C. § 112(f) and is indefinite. |

Georgetown respectfully submits that "determining" should be construed the same here as it argued in the earlier early *Markman* briefing, *see*, Dkt. 80, p. 12-13, and as discussed above in section **V.B.2**.  Briefly, no construction for the term "determining," is necessary.  Determining is not used in claim 16, or the '329 Patent, in any special or unaccustomed way, and is understandable using its ordinary, English language meaning (e.g., concluding, establishing, or ascertaining).

To the extent Holland's position is understood, it is without merit.  As noted above, in sections **V.B.2.a.-e.**, claim 16 is not a means-plus-function claim and Holland's analysis is fatally flawed. Furthermore, to the extent that Holland is going to raise issues of indefiniteness under 35 U.S.C § 112, ¶2, Georgetown will address any such issues in a responsive submission to the Court.  As apparent from the above, Georgetown submits that claim 16 is definite.

## VI.  CONCLUSION

For at least the foregoing reasons Georgetown asks that its constructions for the above-noted terms be adopted.

DATED THIS 7th day of February, 2014.

PARSONS BEHLE & LATIMER


By   */s/ Christopher Cuneo*
      Christopher Cuneo (admitted E.D. Texas)
      Dana M. Herberholz (admitted E.D. Texas)
      PARSONS BEHLE & LATIMER
      960 Broadway Avenue, Suite 250
      Boise, Idaho 83706
      Telephone:  (208) 562-4900
      Facsimile:  (208) 562-4901
      Email:   ccuneo@parsonsbehle.com
           dherberholz@parsonsbehle.com

      Trey Yarbrough, Texas Bar No. 22133500
      Debby E. Gunter, Texas Bar No. 24012752
      YARBROUGH WILCOX GUNTER, PLLC
      100 E. Ferguson Street, Suite 1015
      Tyler, Texas 75702
      Telephone:  (903) 595-3111
      Facsimile:  (903) 595-0191
      Email:   trey@yw-lawfirm.com
           debby@yw-lawfirm.com

      Attorneys for Plaintiff
      Georgetown Rail Equipment Company

GEORGETOWN RAIL EQUIMENT COMPANY'S P.R. 4-5(a) OPENING *MARKMAN* CLAIM CONSTRUCTION BRIEF - 18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of February, 2014, I electronically filed the within and foregoing instrument with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to all counsel who have entered an appearance in this action.


*/s/ Christopher Cuneo*
Christopher Cuneo